2015 JAN 20 AM 9:35



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70926-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| WILLIAM THOMAS NELSON, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 20, 2015 |
| | ) | |

TRICKEY, J. — Before admitting evidence of "other crimes, wrongs, or acts" under ER 404(b), the trial court must consider the purpose and relevance of the evidence and assess the probative value and potential prejudice. Here, the trial court did not abuse its discretion in admitting several court-related documents bearing William Nelson's name and address that suggested the existence of an unrelated criminal charge. Nor was the court's limiting instruction deficient or a comment on the evidence. The arguments in Nelson's statement of additional grounds for review are also without merit. We therefore affirm Nelson's conviction for possession of heroin with the intent to deliver.

## FACTS

On December 30, 2011, city of Everett police officers executed a search warrant at a residence on Rucker Avenue. After entering the house, Detective Duane Wantland contacted William Nelson, the target of the search. While the search was proceeding, Wantland advised Nelson of his Miranda[1] rights, and Nelson agreed to talk.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Nelson said that he had been staying in the house with his girlfriend, Zedna Hester, for about a month. He was currently unemployed and receiving unemployment benefits of $140 per week. Nelson identified the room that he and Hester were occupying and acknowledged that the officers would probably find drug paraphernalia in the house. Nelson claimed that he was "dry,"[2] meaning that he currently had no drugs for sale, but indicated that he might be getting a fresh supply that evening from "Steve."[3]

Nelson eventually said that there was an ounce of heroin hidden in a pool cue case in the closet of his room. According to Wantland, an ounce of heroin, which has a street value of $1,200 to $1,500, is more consistent with a dealer's stock than a user's supply.

Officer Lance Uhden searched the room that Nelson and Hester occupied. He found approximately one ounce of heroin in the location that Nelson described. Uhden also recovered four digital scales with suspected drug residue, plastic baggies commonly used for packaging drugs, and drug paraphernalia. Purses on the bed contained two small baggies of heroin and methamphetamine, marijuana, $805 in cash, and two bail bond receipts showing payments totaling $500 in Nelson's name. A "Summons/Bail Notice" from Everett Municipal Court, dated December 8, 2011, containing Nelson's name and the Rucker Avenue address of the residence was tacked

---

[2] 4 RP (September 9, 2013) at 50.
[3] 4 RP at 51.

2

to the wall.[4] The bail bond receipts, dated December 7 and 8, 2011, referenced the case number on the municipal court summons.

The State charged Nelson with one count of possession of heroin with intent to deliver. Prior to trial, Nelson moved to exclude the bail bond receipts and the municipal court summons. Defense counsel conceded that the presence of such documents containing Nelson's address in the room was relevant to the issue of the ownership of the drugs. Counsel argued, however, that admission of the actual documents was unnecessary and would be unduly prejudicial because they suggested the existence of "other criminal matters or bad acts."[5] The trial court indicated that the documents were relevant to rebut Nelson's apparent defense that the heroin did not belong to him and that he did not live in the house, but deferred ruling on the admissibility of the documents.

On the first day of trial, defense counsel again raised the issue. Counsel conceded that the documents were relevant, but maintained that State witnesses could testify they found "[o]fficial documents" in the room without admission of the actual documents.[6] The trial court concluded that the probative value outweighed the prejudicial effect and ruled the documents were admissible under ER 404(b). The court directed that the summons be redacted to remove the notation "FTA [(failure to appear)] jury trial"[7] and any reference to the charge.

---

[4] 5 RP (September 10, 2013) at 72.
[5] 2 RP (April 15, 2013) at 55.
[6] 4 RP at 6.
[7] 4 RP at 11.

During the testimony of Officer Uhden, the trial court admitted exhibits 62, 64, and 65, which consisted of photographs of the bail bond receipt dated December 8, 2011, and portions of the municipal court summons. Without objection, the court gave a limiting instruction. A short time later, without objection, the trial court admitted exhibits 5A, 5B, and 5C, which Uhden identified as the two bail bond receipts and the summons. The trial court did not give another limiting instruction.

Daniel Olds testified that at the time of the search, he was living in the Rucker Avenue house with three other people, including Zedna Hester. Olds denied that Nelson ever lived in the house, but he would visit Hester two or three times a month. Olds acknowledged that Nelson had been staying in the house for about a month before the search. Olds also admitted that Nelson and Hester were the only people staying in the room, that Nelson kept his clothes and other personal property in the room, and that Nelson could exclude Olds from the room if he did not want Olds to enter.

Olds acknowledged that about seven months after the search, he provided a letter, an affidavit, and a recorded interview to Nelson's attorney admitting that the heroin in the pool cue case was his. At trial, Olds retracted his admissions and flatly denied that the heroin was his. He explained that he had made the admission only because he felt "sorry"[8] for Nelson and believed that Nelson was facing a lengthy prison term.

---

[8] 5 RP (September 10, 2013) at 110.

4

During closing argument, defense counsel suggested that Olds' retraction of his admissions about the heroin raised "some credibility problems,"[9] but also stressed that Olds consistently maintained that Nelson did not live in the apartment. Counsel noted that it would have been reasonable for Hester to have paid Olds' bail. Counsel argued that under the circumstances, including the uncertain nature of Nelson's residence, the State's failure to present evidence of the clothing or other personal property in the room and the presence of several other residents, raised a reasonable doubt as to whether Nelson possessed or owned the drugs.

The jury found Nelson guilty as charged, and the court imposed a standard-range sentence.

## ANALYSIS

Nelson contends that the trial court erred in admitting the municipal court summons and bail bond receipts under ER 404(b) because the documents informed the jury that he had other criminal charges pending. Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." But such evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b).

Before admitting evidence under ER 404(b), the trial court must analyze on the record the purpose for admitting the evidence and the relevance of the evidence to

---

[9] 5 RP at 161.

5

prove an element of the crime or to rebut a defense and then weigh the probative value of the evidence against its prejudicial effect. See State v. Smith, 106 Wn.2d 772, 775-76, 725 P.2d 951 (1986). When evidence is admissible under ER 404(b), the party against whom the evidence is admitted may request a limiting instruction "informing the jury that the evidence is to be used only for the proper purpose and not for the purpose of proving the character of a person in order to show that the person acted in conformity with that character." State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). We review the trial court's decision to admit or exclude evidence under ER 404(b) for an abuse of discretion. State v. Foxhoven, 161 Wn.2d 168, 176, 163 P.3d 786 (2007).

Nelson contends the only specific ER 404(b) exception that comports with the trial court's admission of the documents was "identity."[10] He argues that his identity was not at issue and that, in any event, the evidence was not relevant to the charged offense.

But the trial court did not admit the evidence to establish identity. Contrary to Nelson's contention, "the list of other purposes in the second sentence of ER 404(b) is merely illustrative." Gresham, 173 Wn.2d at 420. Defense counsel acknowledged that Nelson was raising a general denial defense. The trial court repeatedly observed that the presence of the documents in the room would be relevant to rebut the defendant's apparent claims that he did not live in the house and that the drugs and other materials in the room did not belong to him:

---

[10] Br. of Appellant at 10.

Court documents. I mean, court documents is what tips the balance, in my view, of the importance of these documents. Somebody is more likely to keep court documents with them than any other documents or a birth certificate or something like that, right?[11]

The presence of a recent court-issued document and related materials bearing Nelson's name and the address of the house was highly relevant, along with the other evidence, to establish Nelson's occupancy of the room and possession of the items within it, including the drugs. The evidence was also relevant to rebut Nelson's implicit defense. The documents were therefore admissible for a proper purpose and relevant to establish an element of the offense.

Nelson also contends that the trial court did not balance the probative value of the evidence against its prejudicial effect. He argues that the court focused solely on the probative value of the evidence. But the record belies this contention.

The trial court considered the admissibility of the documents on two separate occasions. On each occasion, defense counsel repeatedly conceded, in response to the court's questions, that the documents were relevant. The court clearly recognized that the primary issue therefore involved the balancing of probative value and prejudicial effect. At the conclusion of the argument, the court expressly stated that it found the documents' "probative value outweighs their prejudicial nature"[12] and ordered the summons be redacted to eliminate the reference to the charged offense and the notation "FTA jury trial." The record demonstrates that the court properly weighed

---

[11] 4 RP at 6.
[12] 4 RP at 6.

probative value and prejudicial effect under ER 404(b). See State v. Hughes, 118 Wn. App. 713, 725, 77 P.3d 681 (2003) (record adequately demonstrated the trial court's reasoning even though court did not fully articulate balancing on the record).

Given Nelson's defense, the documents were highly probative of his occupancy and his possession of the various items in the room. Although evidence of another pending criminal charge may have been prejudicial, the danger of unfair prejudice was minimal. The redacted municipal court documents did not indicate the type of charge. The bail bond receipts suggested that Nelson had been released from jail, but they did not indicate a conviction, suggest any propensity to commit the charged crime, or otherwise provide information that might trigger an improper emotional response from the jury. The trial court did not abuse its discretion in determining that the danger of unfair prejudice did not outweigh the probative value and admitting the documents under ER 404(b).

Nelson next contends that the trial court gave an inadequate limiting instruction after ruling that the documents would be admitted. Exhibits 62, 64, and 65 depicted two portions of the summons and the December 8 bail bond receipt. After admitting the exhibits during the State's direct examination of Officer Uhden, the court gave the following instruction:

> Ladies and gentlemen, Exhibit Number 62, this one here, Exhibit 64 and 65 have all been admitted. However, I'm going to give you what's called a limiting instruction on these. These exhibits and the documents they represent that are admitted relate to other court cases in regards to Mr. Nelson. These cases are not before you today and you should not infer anything against Mr. Nelson nor should you make any assumptions about Mr. Nelson based upon these three exhibits being admitted. In

other words, you are not to prejudice Mr. Nelson about the existence or content of these three documents in regards to other court cases. You're not to make any assumptions that because this references other court cases, therefore it's more than likely he's doing something here.

Do you understand that? Do you understand that issue about no prejudice should be taken from these documents?[13]

Approximately 25 minutes later, still during Uhden's direct examination, the court admitted, without objection, exhibits 5A, 5B, and 5C, which were copies of the full summons and both the December 7 and December 8 bail bond receipts.[14] The court did not repeat the limiting instruction.

Nelson argues that the court's failure to give a limiting instruction as to exhibits 5A, 5B, and 5C left the jury free to consider the exhibits as evidence of his propensity to commit criminal acts. We disagree.

Defense counsel did not request a second limiting instruction, and the trial court is not required to give one sua sponte. See State v. Russell, 171 Wn.2d 118, 123-24, 249 P.3d 604 (2011). Moreover, the absence of a second limiting instruction was not prejudicial. See also State v. Yarbrough, 151 Wn. App. 66, 90, 210 P.3d 1029 (2009) (failure to propose a limiting instruction presumed to be a legitimate trial tactic not to reemphasize damaging evidence).

The court's limiting instruction directed the jury's attention not only to the specific exhibits 62, 64, and 65, but also to "the documents they represent" and to the fact they

---

[13] 5 RP at 26.
[14] 5 RP at 39.

related to another court case.[15] Exhibits 5A and 5B were complete copies of the same documents reproduced in exhibits 62, 64, and 65. Exhibit 5C, a copy of the December 7 bail bond receipt, was virtually identical to the December 8 receipt depicted in exhibits 62 and 5B and included the same case number. Under the circumstances, there was no reasonable likelihood that the jury would ignore the substance of the court's limiting instruction and consider essentially the same documents that were admitted only a short time before for any improper purposes. See State v. Stein, 144 Wn.2d 236, 247, 27 P.3d 184 (2001) (jury presumed to follow court's instructions).

Nelson next contends that the trial court improperly commented on the evidence in its limiting instruction by informing the jury that the exhibits related to "other court cases in regards to Mr. Nelson."[16] He argues that the comment conveyed to the jury the court's belief that "the documents depicted in the exhibits were associated with the same 'Nelson' on trial and thereby eliminated the possibility that one or more jurors might find the prosecution failed to prove the person listed on the documents was the same person on trial for heroin possession."[17]

Article IV, section 16 of the Washington Constitution "prohibits a judge from conveying to the jury his or her personal attitudes toward the merits of a case." State v. Becker, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997). An impermissible comment on the evidence is one "which conveys to the jury a judge's personal attitudes toward the

---

[15] 5 RP at 26.
[16] 5 RP at 26.
[17] Br. of Appellant at 19.

10

merits of the case or allows the jury to infer from what the judge said or did not say that the judge personally believed the testimony in question." State v. Swan, 114 Wn.2d 613, 657, 790 P.2d 610 (1990). Whether an instruction constitutes a comment on the evidence necessarily depends on the facts and circumstances of each case. State v. Stearns, 61 Wn. App. 224, 231, 810 P.2d 41 (1991).

Here, the relevance and admissibility of the challenged documents necessarily rested on the fact that the defendant Nelson was the "William Nelson" named on the documents found in his room. Defense counsel conceded that the documents were relevant and did not dispute that he was the same person. The court's reference to that fact did not convey the court's personal belief about the merits of the case or the weight to be accorded any of the admitted evidence. Moreover, the identity of the person named on the documents was not an element of the charged offense. The trial court's limiting instruction did not constitute an unconstitutional comment on the evidence. "'[A]ssumption of an admitted or undisputed peripheral fact does not constitute constitutionally inhibited comment.'" State v. Jones, 171 Wn. App. 52, 55, 286 P.3d 83 (2012) (alteration in original) (quoting State v. Louie, 68 Wn.2d 304, 314, 413 P.2d 7 (1966)).

Finally, Nelson contends that even if no single error merits reversal, the cumulative effect of the errors materially affected the jury's verdict. Because he has not demonstrated an accumulation of errors, the cumulative error doctrine does not apply. See In re Pers. Restraint of Lord, 123 Wn.2d 296, 332, 868 P.2d 835 (1994).

In his statement of additional grounds for review, Nelson challenges the sufficiency of the evidence to support his conviction. He argues that there was no evidence that he physically possessed the heroin, the cash, or the drug packaging materials found in the room or that he signed a lease or rental agreement to live in the house.

But as the trial court instructed the jury, possession of a controlled substance may be either actual or constructive. See State v. Staley, 123 Wn.2d 794, 798, 872 P.2d 502 (1994). Moreover, contrary to Nelson's assertions, circumstantial and direct evidence are equally reliable. State v. Miller, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014).

Viewed in the light most favorable to the State, the evidence of Nelson's knowledge of the location and amount of the heroin, his occupancy of the room and ability to exclude others, his economic circumstances, the value of the heroin, and the amount of cash in the room, and his admissions regarding potential drug sales permitted the jury to find that Nelson exercised dominion and control over the heroin with an intent to deliver. The evidence was sufficient to support his conviction.

Nelson also asserts that Daniel Olds' testimony recanting his earlier claims that the heroin belong to him was not credible. But credibility determinations are reserved for the trier of fact and cannot be reviewed on appeal. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990) (appellate court defers to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence).

Affirmed.

_Trickey, J_

WE CONCUR:

_Verellen, J._                    _Spearman, C.J._